UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

STILWELL PARTNERS, L.P., et al.,

                                      Plaintiffs,

v.

SENECA-CAYUGA BANCORP, INC.,

                                      Defendant.

Case # 19-CV-6823-FPG

DECISION AND ORDER

## INTRODUCTION

Plaintiffs Stilwell Partners, L.P. and Stilwell Activist Investments, L.P., are stockholders of Defendant Seneca-Cayuga Bancorp, Inc. They brought this action to compel Defendant to permit inspection of its books and records, pursuant to 12 C.F.R. § 239.30. Plaintiffs have now filed a motion to compel that inspection. ECF No. 5. Defendant opposes the motion and cross-moves to dismiss the complaint. ECF No. 10. For the following reasons, Plaintiffs' motion is GRANTED IN PART AND DENIED IN PART WITHOUT PREJUDICE, and Defendant's motion is DENIED.

## BACKGROUND

Before delving into the parties' dispute, it will be helpful to provide an overview of the regulatory environment in which the parties operate.

"In 1933, Congress enacted the Home Owners' Loan Act," which "authorized the creation of federally chartered mutual savings and loan associations." *York v. Fed. Home Loan Bank Bd.*, 624 F.2d 495, 497 (4th Cir. 1980). Originally, these banks were organized as "mutual associations," meaning that ownership rests in the customers who deposit money with the bank.

1

*See Ordower v. Office of Thrift Supervision*, 999 F.2d 1183, 1185 (7th Cir. 1993). This may be contrasted with a stock association, where those holding stock own the bank. That is, "[m]utual associations differ from ordinary stock corporations in that they have no stock or shareholders, but instead are operated for the mutual benefit of their depositors . . . . Stock savings associations . . . are like ordinary stock corporations—they are owned and controlled by persons holding their stock." *Dougherty v. Carver Fed. Sav. Bank*, 112 F.3d 613, 615 (2d Cir. 1997).

In 1973, Congress passed legislation to allow federally chartered mutual associations to convert to federal stock associations. *York*, 624 F.2d at 497-98. In connection with this, the Federal Home Loan Bank Board, the federal regulator at the time, issued regulations on the governance of federal stock associations. One of those regulations, 12 C.F.R. § 552.11, conferred a right on certain stockholders to inspect the books and records of the association. Section 552.11 is the predecessor of 12 C.F.R. § 239.30—the regulation that Plaintiffs invoke in the present action.

In 1987, Congress enacted the Competitive Equality Banking Act of 1987, which "created a new type of creature, the mutual holding company." Stanley I. Langbein, *Federal Income Taxation of Banks & Financial Institutions*, ¶ 8.05, 1999 WL 629805, at *3 (2020). Under this structure, the mutual association becomes a stock association, but the majority interest in the association is held by a holding company. "The interests of account holders," who had previously owned the mutual association, are then migrated to the holding company. *Id.* Thus, the holding company "becomes the corporate repository of the mutual members' economic and legal interests. It must own a controlling interest in the newly created stock institution, but it may sell up to 49.9% of the institution's voting stock, as well as any nonvoting stock, as a means to raise capital." Office of Thrift Supervision, *Holding Companies Handbook*, § 920.1 (January 2003). This structure

"allows the organization to maintain many of the features of a mutual [association] while providing access to capital markets." *Id.*

The relationship between the parties follows this organizational structure. Generations Bank is a wholly owned subsidiary of Defendant. Defendant is classified as a "subsidiary holding company." The majority of Defendant's stock is held by Seneca Falls Savings Bank, MHC (the "MHC")—a mutual holding company—and a minority is held by members of the public. Plaintiffs hold approximately 9.9% of Defendant's stock, and they are the largest independent stockholder. ECF No. 1 at 2. Defendant proves a helpful diagram of the relationship:



ECF No. 10-3 at 7.

It is Plaintiffs' position, however, that this organizational structure operates for the benefit of the board of directors of Defendant and the MHC, to the detriment of shareholders. They contend that, because depositors have "no real economic interest in," or oversight over, the MHC, the MHC's board is "self-perpetuating" and uses the MHC as a "shell company through which [it] can perpetuate . . . control over" Defendant. ECF No. 1 at 3. Moreover, the boards of the MHC and Defendant largely overlap. *Id.*

Plaintiffs allege that this self-interested control has come at the expense of stockholders. They claim that Defendant and its board have "failed to meet [their] fiduciary responsibilities to [their] public stockholders." *Id.* Among other things, since its initial public offering, Defendant's annual return on assets "was a paltry 0.26%," it paid only "$.021 per share in dividends," and its stock price increased only 80 cents from its initial offering price. *Id.* at 3-4.

Plaintiffs contend that the remedy for these problems is what they call a second-step conversion:

> In such a second-step conversion, the MHC's shares are offered for sale to its members (*i.e.*, the depositors and certain borrowers of the Bank); any shares not subscribed for by the MHC's members would then be offered for sale to the public, and the MHC would be dissolved.

*Id.* at 4. On May 4, 2017, Plaintiffs' representatives met with Defendant's board and made a presentation "about the benefits of a second-step to [Defendant] and its public stockholders." *Id.*; ECF No. 5-3. On January 29, 2018, after Defendant's board took no action on Plaintiffs' proposal, Plaintiffs made a written demand that the board initiate the second-step conversion. Defendant's board did not respond to Plaintiffs' demand.

On June 12, 2019, Plaintiffs sent another demand for a second-step conversion. On July 22, 2019, Defendant "replied by letter . . . merely acknowledging receipt . . . while entirely avoiding its substance." ECF No. 1 at 6; ECF No. 5-5 at 2.

Based on the actions of Defendant's board, Plaintiffs believe that "there are potential claims for breach of fiduciary duties against [Defendant] and its board of directors," as their "inappropriate actions in refusing to second-step . . . appear to directly undermine stockholder rights and work contrary to the best interests of [Defendant] and its public stockholders." ECF No. 1 at 6. As a result, on September 4, 2019, Plaintiffs sent a letter requesting that they be allowed

4

to inspect certain materials. *See id.* at 15-23. The letter requested a wide swath of materials related to the board's consideration of the second-step proposal:

1. Any and all transcripts, notes, minutes and other records of meetings, written consents in lieu of meetings, and resolutions of the board or any and all committees thereof, and all reports, analyses and documents provided to, or prepared by or on behalf of [Defendant] or any advisor or consultant to [Defendant] or the board ("Board Materials"), directly or indirectly relating to the board's deliberations and/or considerations, if any, of (a) [Plaintiffs'] demands and the board's decision to refuse to initiate a second-step; (b) the adequacy of [Defendant's] level of capital; and (c) returns to the public shareholders.

2. Any and all communications, including e-mail communications, with any third-parties concerning the board's deliberations, if any, and decision to refuse to initiate a second-step in response to [Plaintiffs'] demands; and

3. All Board Materials and any and all communications, including e-mail communications, with any third-parties, directly or indirectly relating to the hiring of any consultants to study, determine or opine on the board's deliberations, if any, and decision to refuse to initiate a second-step in response to [Plaintiffs'] demands and/or decision to take any other course of action in lieu of a second-step in response to [Plaintiffs'] demands.

*Id.* at 20-21. Plaintiffs stated that the purpose of the demand was to determine "the existence and extent of (a) any improper behavior on the part of [Defendant's] board concerning the board's deliberations, if any, and decision to refuse to initiate a second-step in response to [Plaintiffs'] demands; and (b) whether the directors of [Defendant] have breached their fiduciary duties to [Defendant] and its shareholders with respect to such behaviors." *Id.* at 21.

On September 24, 2019, Defendant's counsel responded that they were reviewing the demand. On October 18, 2019, defense counsel sent another letter, that stated in full:

Reference is made to Stilwell Partners, L.P.'s and Stilwell Activist Investments, L.P.'s (collectively, "Stilwell") letter to Seneca-Cayuga Bancorp, Inc. ("SCAY") dated September 4, 2019 demanding access to a wide range of non-public books, records and other documents under 12 C.F.R. Section 239.30. Stilwell's demand does not meet the requirements of applicable law and regulation and, accordingly, SCAY declines to provide Stilwell with access to the requested records.

5

ECF No. 5-8 at 2. On October 23, 2019, after Plaintiffs requested a fuller explanation for the refusal, counsel responded with another letter that stated in full:

> We have your letter of October 21, 2019. Seneca-Cayuga Bancorp, Inc. properly responded to your clients' demand letter, which requires no further attention.

ECF No. 5-10 at 2.

Plaintiffs thereafter brought the present action. ECF No. 1. They allege that Defendant violated § 239.30 by refusing their inspection demand. They seek an order compelling inspection, along with declaratory relief.

## DISCUSSION

12 C.F.R. § 239.30(b)(2) reads:

> Any stockholder or group of stockholders of a subsidiary holding company, holding [a certain numbers of shares], upon making written demand stating a proper purpose, shall have the right to examine, in person or by agent or attorney, at any reasonable time or times, nonconfidential portions of its books and records of account, minutes and record of stockholders and to make extracts therefrom.

Breaking this language down, § 239.30 confers a right on stockholders to examine a subsidiary holding company's books and records, but this right is qualified in several respects. First, the right only extends to the company's "books and records of account," "minutes," and "record of stockholders." Second, stockholders may not inspect confidential portions of those documents. Third, even if the right otherwise extends to the documents in question, the inspection must be for a "proper purpose."

The parties' motions raise the same overarching question: does Plaintiffs' inspection demand satisfy these requirements? Answering that in the negative, Defendant requests that the Court dismiss the case. ECF No. 10. Answering that in the affirmative, Plaintiffs ask the Court to compel the inspection of the requested materials. ECF No. 5.

6

As will be discussed in more detail below, the Court grants Plaintiffs' motion to compel in part and denies it in part without prejudice. While Plaintiffs' inspection demand is broad, it is clear that they are entitled to inspect at least some of the documents they request—namely, all formal board materials concerning the board's consideration of Plaintiffs' demand for a second-step conversion. Formal board materials consist of "the minutes for the [board] meeting and the materials that the directors received and reviewed." *Amalgamated Bank v. Yahoo! Inc.*, 132 A.3d 752, 790 (Del Ch. 2016), *abrogated on other grounds by Tiger v. Boast Apparel, Inc.*, 214 A.3d 933 (Del. 2019). These kinds of materials are generally nonconfidential and are routinely produced for stockholder inspection. Given Plaintiffs' allegations of Defendant's conduct—which Defendant did not materially dispute in its opposition to the motion to compel—Plaintiffs have established a proper purpose for seeking these materials.

Furthermore, it may be that these formal board materials will be sufficient to satisfy Plaintiffs' purpose, *i.e.*, to determine whether and why Defendant rejected their proposal. As one court remarked, "The starting point—and often the ending point—for a sufficient inspection will be board level documents evidencing the directors' decisions and deliberations." *Id.* If the formal board materials fully clarify the board's actions and reasoning, it may be unnecessary to determine whether Plaintiffs are also entitled to documents like emails, notes, and internal correspondence. At the least, compelling limited disclosure now will help to provide a better developed record on which to decide any remaining issues.[1]

The Court therefore orders Defendant to produce formal board materials related to the second-step proposal, but declines to address Plaintiffs' other demands at this time. Because Plaintiffs are entitled to inspect some of Defendant's records, the case will not be dismissed.

---

[1] A cautious approach is also preferable given that the Court has been unable to find, and the parties do not cite, any case law on the application of § 239.30(b)(2).

### I. Formal Board Materials are Subject to Inspection under § 239.30(b)(2)

As noted, only "books and records of account," "minutes," and the "record of stockholders" are subject to inspection under § 239.30(b)(2), but the regulation does not define those terms. Arguing for a narrow interpretation of those phrases, Defendant contends that "books and records of account" refer to "financial and accounting records," and "minutes" refer only to the summary of actions taken at a board meeting, not to any "documents presented at the meeting or other records of the meeting." ECF No. 10-3 at 17. Under Defendant's interpretation, the only formal board materials to which Plaintiffs could be entitled are the summary meeting minutes, *i.e.*, the "record of the subjects discussed and actions taken at the meeting." *Id.* They would not be entitled to the reports or documents that the board reviewed.

The Court is not persuaded. Defendant correctly concedes that "summary meeting minutes" are subject to inspection under § 239.30(b)(2). The regulations explicitly require Defendant to maintain, and allow Plaintiffs to inspect, minutes of board meetings. 12 C.F.R. § 239.30(b)(1), (2). As for the documents presented or reviewed at a board meeting, the Court finds such materials inspectable as "books and records of account." As the history of § 239.30 makes clear, that phrase is to be broadly and liberally construed.

The Federal Home Loan Bank Board modeled the inspection-demand rule contained in § 239.30 (then 12 C.F.R. § 552.11) on other legislation, and that legislation was understood to be broad and liberal in its scope. *Cf. Shannon v. United States*, 512 U.S. 573, 581 (1994) ("[W]henever Congress . . . has borrowed from the statutes of a State provisions which had received in that State a known and settled construction before their enactment by Congress, that construction must be deemed to have been adopted by Congress together with the text which it expounded, and the provisions must be construed as they were understood at the time in the

State."); *Hoffman v. Palmer*, 129 F.2d 976, 985 (2d Cir. 1942). Specifically, the agency borrowed its rule from the Model Business Corporation Act. At the time of adoption, § 552.11 read:

> Any stockholder . . . upon making written demand stating a proper purpose, shall have the right to examine, in person or by agent or attorney, at any reasonable time or times, its books and records of account, minutes and record of stockholders and to make extracts therefrom.

Federal Home Loan Bank Board; Federal Charters, 40 Fed. Reg. 20943, 20950-51 (May 14, 1975).

The relevant language of Section 46 of the Model Act (1950) reads:

> Any [shareholder] . . . shall have the right to examine, in person, or by agent or attorney, at any reasonable time or times, for any proper purpose, its books and records of account, minutes and record of shareholders and to make extracts therefrom.

In *Meyer v. Ford Industries, Inc.*, 538 P.2d 353 (Or. 1975) (en banc), the Oregon Supreme Court thoroughly analyzed the history of the inspection-demand provision of the Model Act. The Model Act, including the inspection-demand provision, was based on the Illinois Business Corporations Act. *Meyer*, 538 P.2d at 355-56. "In turn, [the inspection-demand] provision of that Illinois statute was based upon an earlier Illinois statute which had been the subject of considerable litigation." *Id.* at 356. As part of that "considerable" litigation, Illinois courts consistently interpreted "books and records of account" broadly to include contracts, correspondence, papers, and other materials outside of mere financial or accounting records. *See id.* at 356-58.

Thus, as used in the Model Act, "the term 'records and books of account' . . . [was] not . . . limited to 'books and records of account' in any 'ordinary,' literal or otherwise limited sense, but [was] the subject of a broad and liberal construction so as to extend to all records, contracts, papers and correspondence to which the common law right of inspection of a stockholder may properly apply." *Id.* at 358. The common law right of inspection extends to "all material corporate documents," and is not limited to accounting or financial records. 5A Fletcher Cyclopedia of

Private Corporations § 2214 (Apr. 2020 update); *see also Tucson Gas & Elec. Co. v. Schantz*, 428 P.2d 686, 688 (Ariz. Ct. App. 1967) ("Generally speaking, the right of a stockholder extends to all books, papers, contracts, minutes or other instruments from which he can derive any information that will enable him to protect his interest.").

Based on the history of § 239.30 and the Model Act, it is fair to presume that the Federal Home Loan Bank Board was aware of the broad interpretation of "books and records of account" and intended to retain it when it adopted the regulation. Indeed, the agency must have been aware of the import of the Model Act and the common law, as it explicitly departed from those rules in other respects. *See, e.g.*, 12 C.F.R. § 552.11(b) (1975) ("No stockholder . . . shall have any other right *under this section or common law* to examine its books and records of account, minutes and records of stock holders . . . ." (emphasis added))[2]; *id.* § 552.11(d) ("*Notwithstanding any provision of this section or common law*, no stockholders . . . shall have the right [to inspect certain personal records]." (emphasis added)). Beyond these few caveats, however, the agency retained the Model Act's basic language.

This is not to say that Defendant's interpretation is implausible. Defendant cogently argues that, if interpreted broadly, the phrase "books and records of account" would impose a "vaguely defined record-keeping obligation on [it]" under § 239.30(b)(1), which requires companies to maintain "correct and complete books and records of account." ECF No. 10-3 at 16. Moreover, the term "of account" in the phrase "books and records of account" is rendered surplusage if it is not interpreted to modify the meaning of "books" and "records." *See id.*

---

[2] The purpose of this limitation was to "provide a minimum stock ownership requirement which must be satisfied in order for a stockholder to be entitled to inspection." Federal Home Loan Bank Board; Federal Charters, 40 Fed. Reg. 20943, 20944 (May 14, 1975).

Still, at least as to formal board materials, these arguments do not carry the day. Formal board materials "evidencing the directors' decisions and deliberations, as well as the materials that the directors received and considered," can usually be collected "easily and quickly with minimal burden." *Yahoo! Inc.*, 132 A.3d at 790 (noting that in "many organizations, the corporate secretary maintains a central file for each board meeting . . . . [that] contains the minutes for the meeting and the materials that the directors received and reviewed"). Defendant fails to explain how it would pose an undue burden on subsidiary holding companies to retain all documents presented and reviewed at each board meeting. To the contrary, retention of such documents appears to be consistent with ordinary business practice. *See id.* at 790 & n.38.

Furthermore, Defendant's interpretative argument does not adequately account for the historical vintage of § 239.30(b)(2). The disputed phrase, as borrowed from the Model Act, carried a broader meaning than what might be supposed if one were to simply reference the most recent volume of *Black's Law Dictionary*. *See New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 539 (2019) (noting the "fundamental canon of construction" that words should be interpreted in light of their ordinary meaning at the time the law was adopted). In addition, given the regulation's explicit modifications to and abrogation of some common law principles, the agency was clearly aware of the state of the law at that time, and yet it retained the basic, broadly interpreted right of a stockholder to inspect "books and records of account." If anything, the limitations that the agency added show that it primarily sought to restrict the pool of stockholders who could access corporate documents, not the types of documents that stockholders could access.

Accordingly, the Court rejects Defendant's narrow interpretation and concludes that the documents subject to inspection under § 239.30 extend to formal board materials, *i.e.*, "board level

documents evidencing the directors' decisions and deliberations, as well as the materials that the directors received and considered." *See Yahoo! Inc.*, 132 A.3d at 790.

Nevertheless, even if certain documents are generally inspectable, § 239.30(b)(2) places other restrictions that qualify the right of inspection: the stockholder must have a "proper purpose" for making the demand, and the documents must not be confidential. It is to those issues that the Court now turns.

## II. Plaintiffs' Demand for Formal Board Materials is for a Proper Purpose

The regulation's requirement that a stockholder's demand be for a "proper purpose" is consistent with the common law. *See Meyer*, 538 P.2d at 357; *Sawers v. Am. Phenolic Corp.*, 89 N.E.2d 374, 378 (Ill. 1949); Fletcher, *supra* § 2219. At common law, a stockholder had a legal right of inspection "when sought in good faith for a specific and honest purpose, not to gratify curiosity or for speculative or vexatious purposes, providing also the interest of such applicant [was] as a stockholder and [was] lawful in character and not contrary to the interests of the corporation." *Sawers*, 89 N.E.2d at 378; *see also Davey v. Unitil Corp.*, 585 A.2d 858, 860 (N.H. 1991) ("A 'proper purpose' is generally defined as a purpose that is (1) related to a legitimate interest of a shareholder, and (2) not harmful to the corporation or its shareholders."). Insofar as a stockholder's purpose cannot be speculative, the stockholder must have some factual basis to justify his investigation or demand. *See, e.g.*, *Seinfeld v. Verizon Comm'ns, Inc.*, 909 A.2d 117, 122 (Del. 2006); *Sec. First Corp. v. U.S. Die Casting & Dev. Co.*, 687 A.2d 563, 568 (Del. 1997) ("Mere curiosity or a desire for a fishing expedition will not suffice.").

> In their original demand letter, Plaintiffs stated that the purposes of their demand were:
>
> to make a determination as to the existence and extent of (a) any improper behavior on the part of [Defendant's] board concerning the board's deliberations, if any, and decision to refuse to initiate a second-step in response to [Plaintiffs'] demands; and

(b) whether the directors of [Defendant] have breached their fiduciary duties to [Defendant] and its shareholders with respect to such behaviors.

ECF No. 1 at 21. Defendant contends that Plaintiffs' purposes are speculative and that they simply wish to "conduct a fishing expedition into whether [Defendant] breached its fiduciary duties to minority shareholders by not second-stepping." ECF 10-3 at 19. Plaintiffs counter that they have a sufficient basis to support their demand, as the "absence of *any* clear rationale for rejecting [a second-step conversion] . . . leaves mismanagement and self-dealing as the only logical inference." ECF No. 14 at 10.

This issue raises several subsidiary questions that have yet to be directly answered with respect to § 239.30, including which party ought to bear the burden of proof and by what standard a purpose should be found proper. At this time, however, the Court need not resolve these questions, as the facts before the Court establish that Plaintiffs' purpose is proper to the extent they seek formal board materials.

In their complaint, Plaintiffs allege that Defendant has failed to perform adequately since becoming publicly traded. Plaintiffs believe that a second-step conversion is a beneficial means to achieve growth, and they presented their proposal to the board in May 2017. Since that presentation, and despite multiple demands from Plaintiffs, Defendant and its board have never disclosed what action, if any, the board took on Plaintiffs' proposal, let alone why they took it. When Plaintiffs made their inspection demands, Defendant refused to provide even the most basic of explanations or responsive documents, like board minutes. Defendant does not appear to dispute that it has essentially left Plaintiffs in the dark about what happened with the proposal.

Under these circumstances, it was and is proper for Plaintiffs to demand formal board materials related to their proposal. In the Court's view, Defendant's repeated refusal to explain what action the board took legitimates Plaintiffs' demand for more information. Where a

corporation rejects a good-faith proposal to correct underperformance and refuses to explain, even in outline, the outcome or decision-making process, a stockholder can rightly believe that further investigation is warranted. *See* Fletcher, *supra* § 2223 ("Where a petitioner shows that they are a shareholder and are unable to secure information respecting . . . [the company's] method of conducting its business, a prima facie case of good faith is presented."). While the Court is not prepared to say that mismanagement and self-dealing are the proper inferences to draw from Defendant's conduct, the Court is satisfied that Defendant's conduct justifies inquiry into the board's formal deliberations with respect to the second-step conversion.[3]

Plaintiffs' purpose—to determine whether and how the board evaluated their proposal—is proper.

### III. Formal Board Materials are not Entirely Confidential

The final requirement concerns confidentiality: § 239.30(b)(2) permits inspection only of "*nonconfidential portions* of [a subsidiary holding company's] books and records of account [and] minutes." 12 C.F.R. § 239.30(b)(2) (emphasis added). Defendant argues that confidentiality should be construed broadly to encompass any "records related to strategic business and management decisions that have competitive implications." ECF No. 10-3 at 12-13. Plaintiffs respond that confidential information is only that information identified in § 239.30(b)(4), which prohibits a stockholder from inspecting any portion of documents containing lists of depositors or borrowers, their addresses, and individual deposit or loan records. ECF No. 14 at 13-17.

---

[3] Defendant suggests that Plaintiffs' actual reason for the inspection demand is to coerce it into "second-stepping or selling the business." ECF No. 10-3 at 23-24. While that may be Plaintiffs' overarching goal, the Court does not find Plaintiffs' inspection demand—at least in the limited respect delineated above—improper. *See* Fletcher, *supra* § 2223 (stating that the right of inspection may not be denied because the shareholder "is on unfriendly terms with the officers," seeks a change of management, or proposes a change to corporate structure).

14

The Court need not delineate the exact scope of what constitutes confidential information under § 239.30(b)(2). For present purposes, it suffices to reject Defendant's position that *everything* Plaintiffs request is confidential. The Court does so for two reasons.

First, Defendant's argument is wholly lacking in specificity. For example, Defendant goes as far to say that the minutes of a board meeting are confidential, but it does not explain why, as a general matter, the disclosure of the happenings at a board meeting would pose a competitive risk or reveal a trade secret. ECF No. 10-3 at 18 n.2. Aside from invoking generalities about "strategic business decisions," "competitive implications," and the like, Defendant has made little effort to prove the confidentiality of any particular requested document. As questions of confidentiality are necessarily fact-sensitive and context-specific, the absence of a developed explanation geared toward specific documents undermines Defendant's claim. *See Amalgamated Bank v. UICI*, No. Civ.A 884-N, 2005 WL 1377432, at *6 (Del. Ch. June 2, 2005) ("[T]he question of whether a document is entitled to confidential treatment requires a balancing of various considerations within a specific context."). Moreover, even if Defendant could make that showing, § 239.30 seems to contemplate that redaction, not a wholesale bar on disclosure, is the preferred remedy to deal with confidential information. *See* 12 C.F.R. § 239.30(b)(2) (stating that "nonconfidential *portions* of its books and records of account" may be inspected (emphasis added)); *id.* § 239.30(b)(4) (stating that "no stockholder . . . shall have the right to obtain . . . any *portion* of any books or records" containing personal information (emphasis added)). Thus, Plaintiffs would still be entitled to view the nonconfidential sections of any requested documents, including meeting minutes.

Second, and more importantly, Defendant's argument proves too much. If no stockholder may inspect documents concerning "strategic and business management decisions that have competitive implications," it is difficult to imagine circumstances under which a stockholder could

15

ever inspect documents related to board meetings or decisions. The board's essential function, after all, is to be the "business manager of the corporation." Fletcher, *supra* § 505. But contrary to Defendant's argument, it is indisputably the case that shareholders have the right to investigate a board's decision-making processes via an inspection demand. *See, e.g.*, *KT4 Partners LLC v. Palantir Techs. Inc.*, 203 A.3d 738, 752-53 & n.75 (Del. 2019); *Yahoo! Inc.*, 132 A.3d at 790 & n.37; *see generally* Fletcher, *supra* § 2223. Defendant's interpretation would all but prevent shareholders from doing so, contrary to modern and historical practice. Therefore, the Court cannot agree that § 239.30(b)(2) imposes such a broad notion of confidentiality, and Defendant cannot skirt Plaintiffs' demand on the theory that formal board materials are wholly confidential.

This is not to say that Plaintiffs are entitled to unfettered access to Defendant's books and records. The Court is skeptical of Plaintiffs' claim that *nothing* can be withheld as confidential outside of the discrete items identified in § 239.30(b)(4). Courts must take care to "avoid statutory interpretations that render provisions superfluous," *United States v. Kozeny*, 541 F.3d 166, 174 (2d Cir. 2008), and Plaintiffs' interpretation would require the Court to read out the modifier that only "nonconfidential portions" of books and records can be inspected.[4] That language must place some restriction on a stockholder's inspection right.[5]

---

[4] Plaintiffs suggest that the regulation was amended to include that modifier simply to "clarify that the confidentiality provision in 12 C.F.R. § 552.11(d) applied to 12 C.F.R. § 552.11(b)." ECF No. 14 at 9. The Court disagrees. Before the amendment, it was obvious that subsection (d) restricted the right set out in subsection (b)—subsection (d) expressly stated that certain information was excluded from inspection "[n]otwithstanding any provision of this section or common law." No further clarification was necessary.

[5] This conclusion is consistent with guidance issued by the Office of Thrift Supervision (then the regulating agency) in 1991, before the "nonconfidential portions" language was added to the regulation. *See* Letter of Harris Weinstein, Chief Counsel, Office of Thrift Supervision, 1991 WL 11002893 (Dec. 5, 1991). The agency's Chief Counsel responded to a letter and addressed, among other things, questions of confidentiality under the regulation. He stated that the agency would "consider the laws of Delaware and other states as useful guidance" in assessing issues of confidentiality. *Id.* at *4. This remark would make little sense if the agency was under the impression that only those items identified in § 239.30(b)(4) were confidential. Those items are clearly delineated and unambiguous, so it would be unnecessary to rely on guidance from other states.

Regardless, the Court need not fully decide the question at this juncture. Because Defendant has made no effort to identify any specific documents that are in its view confidential, the Court has before it no concrete dispute. Rather than make any broad pronouncements about confidentiality in the abstract, the Court will address the matter if and when a real dispute arises.

For that reason, the Court will give Defendant some leeway concerning confidential information. When it produces the formal board materials for inspection, Defendant may take steps to prevent the disclosure of information that it contends, in good faith, is confidential for specific, articulable reasons. But the generalizations on which Defendant has heretofore relied will not suffice. The following parameters should guide Defendant in its disclosure: information is not confidential merely because it discloses the board's decision-making or rationale; any claim of confidentiality would need to specifically link a privacy/confidentiality interest to the information contained in the document; and, unless it would not suffice, redaction, not non-disclosure, is the proper means by which Defendant should protect such information. To the extent any disputes arise concerning the redaction or non-disclosure of documents, the parties may seek relief with the Court.

### IV. Summary

Section 239.30(b)(2) gives certain stockholders the right to inspect, upon "making written demand stating a proper purpose," nonconfidential portions of a subsidiary holding company's "books and records of account, minutes and record of stockholders." As to formal board materials, Plaintiffs have adequately alleged that they are entitled to invoke § 239.30(b)(2). Therefore, the complaint will not be dismissed, and Defendant's motion is denied.

Furthermore, in light of the record before the Court, Plaintiffs have established their right to inspect formal board materials. Plaintiffs' motion to compel is granted to that extent, and is otherwise denied without prejudice.

In light of the ongoing COVID-19 Pandemic, the Court will give Defendant additional time to produce the formal board materials. **By June 1, 2020**, Defendant shall produce all formal board materials related to the second-step conversion for inspection by Plaintiffs. The parties shall meet and confer regarding the time and place for the inspection. **By June 8, 2020**, the parties shall file a joint memorandum summarizing the outcome of the inspection and indicating whether there remain any ongoing disputes that require resolution by the Court.

## CONCLUSION

For the reasons discussed above, Plaintiffs' motion to compel (ECF No. 5) is GRANTED IN PART AND DENIED IN PART WITHOUT PREJUDICE. Defendant's motion to dismiss (ECF NO. 10) is DENIED. **By June 1, 2020**, Defendant shall produce all formal board materials (as defined herein) related to the second-step conversion for inspection by Plaintiffs. The parties shall meet and confer regarding the time and place for the inspection. **By June 8, 2020**, the parties shall file a joint memorandum summarizing the outcome of the inspection and indicating whether there remain any ongoing disputes that require resolution by the Court.

IT IS SO ORDERED.

Dated: April 7, 2020
       Rochester, New York

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court